IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| RB PROCESSING, L.L.C | § | CASE NO.  13-32997-H4-11 |
| | § | |
| | § | |
| DEBTOR | § | (Chapter 11) |

**EMERGENCY MOTION FOR ENTRY OF AN ORDER APPROVING DEBTOR'S PAYMENT OF PRE-PETITION COMPENSATION, EMPLOYEE BENEFITS, TAXES, MANDATORY SUPPORT OBLIGATIONS, AND PAYROLL PROCESSING FEES**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**\*\*AN EMERGENCY HEARING ON THIS MATTER WILL BE CONDUCTED ON THURSDAY, MAY 23, 2013 AT 4:30 P.M. IN COURTROOM 600, 6TH FLOOR, 515 RUSK, HOUSTON TX, 77002.\*\***

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 14 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.

EMERGENCY CONSIDERATION OF THIS MOTION HAS BEEN GRANTED.  BECAUSE THE COURT WILL CONSIDER THE MOTION ON AN EMERGENCY BASIS, YOU WILL HAVE LESS THAN 14 DAYS TO ANSWER.  IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED; YOU SHOULD FILE AN IMMEDIATE RESPONSE.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

RB Processing LLC ("RB Processing" or "Debtor"), file this *Emergency Motion for Entry of an Order Approving Debtor's Payment of Pre-Petition Compensation, Taxes, Mandatory Support Obligations, and Payroll Processing Fees* ("Motion").  The grounds for this motion are:

## SUMMARY OF EMERGENCY

1. An emergency exists because this case was filed during the RB Processing's regular payroll cycle.   Debtor owes current employees for prepetition wages, benefits and expense reimbursements for the period of May 13, 2013 through May 15, 2013. These prepetition sums are scheduled to be paid on or about May 30, 2013.   If the Debtor is not allowed to timely pay these sums, it is likely to lose valuable employees.

2. The Debtor currently has 3 employees: two are production personnel who operate the highly specialized Equipment and one is an operations manager (collectively "Employees").  Retention of these employees is critical to the Debtor's continued operation. Other managerial and administrative functions are performed by employees of the Debtor's affiliates and receive no compensation from the Debtor.   Total Prepetition Employee Obligations will not exceed $3000.

### I.       Jurisdiction

3. This Court has jurisdiction by virtue of 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A).

### II.      Venue

4. Venue is proper in this district pursuant to 28 U.S.C. § 1408(1) because the Debtor's principal places of business have been located in this district for more than 180 days preceding the filing of these bankruptcy cases.

### III. BACKGROUND INFORMATION

**THE PARAGRAPHS CONTAINED BELOW IN SECTION III. "BACKGROUND INFORMATION" ARE IDENTICAL TO THE PARAGRAPHS CONTAINED IN SECTION II. "BACKGROUND INFORMATION" OF THE EMERGENCY MOTION (I) FOR ORDER GRANTING AUTHORITY TO USE CASH COLLATERAL AND (II) TO INCUR POST PETITION INDEBTEDNESS UNDER 11 U.S.C. §363, §364, §503(B) AND §105 (DOCKET#5).**

    A. **Overview of the Debtor**

    5.    This case was filed on May 15, 2013 (the "Petition Date") under Chapter 11 of Title 11 of the Bankruptcy Code, 11 U.S.C. §101 et sq. (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

    6.    No trustee or examiner has been appointed in this bankruptcy case and no official committee of unsecured creditors has yet been established.

    7.    RB Processing is a Houston based Texas limited liability company formed in 2008 for the purpose of developing modular, skid-mounted processing plants to process chemicals in order to create higher value products. RB Products Holding, LLC is the sole member of the Debtor and Ray Rice is the manager. RB Processing is part of the RB group, a diversified petrochemical distributor and processor founded in 1996 by Ray Rice and which includes the Debtor, parent company RB Products Holding, LLC, along with affiliates RB Products, Inc., RB Fabrication, L.L.C. and RB Environmental, L.L.C. (collectively "RB Group"). Mr. Rice has been in the chemical business for over 25 years and is the sole manager of RB Group. Other than the Debtor, none of the remaining RB Group entities have sought relief under the bankruptcy code.

    8.    RB Processing has developed the RB Hydrogenation System ("RB Hydro Unit 1" or "Equipment") which is a multi-million dollar modular purification chemical plant with

reactions that will turn fuel-type products into food-grade green oil products by converting unsaturated hydrocarbons to saturated hydrocarbons.  The RB Hydro Unit 1 is a compact facility—a complete chemical plant on one large, transportable skid, including reactor, pumps, heat exchangers, computerized controls, requisite tankage, and connection points for ready integration into site infrastructure.  Conceived for operation at typical liquid-phase hydrogenation pressures, all design and construction is in accordance with the most stringent industry standards typically utilized in modern chemical plant and refinery designs.  The RB Hydro Unit 1 is fully instrumented, with an on-board computer monitoring system that continuously evaluates and adjusts flows, temperatures, pressures, and other parameters to maintain steady operation and product quality.  The company's initial target market is the replacement of fracking fluids and drilling fluids with high-quality green oils.

9.     Due to developmental delays, the RB Hydro Unit 1 did not become operational until November 2012.  Prior to that time, RB Processing had no operations other than the development of the unit and generated no income.  Tangential production issues continued to plague operations which prevented the Debtor from generating revenue. The Debtor estimates that these issues have now been corrected.  In fact, shortly before the Petition Date, the Debtor received two purchase orders for processing.

10.    These purchase order are expected to generate approximately $10,000 in income for the Debtor which should be received within 30-45 days of the Petition Date.  Debtor expects to generate additional sales in the near term.  In addition to the above, as of the Petition Date, the Debtor has assets totaling approximately $4.4 million, consisting primarily of the RB Hydro Unit 1, with a book value of $4.3 million, cash of approximately $7000, inventory of approximately $36,000 and other FFE of approximately $30,000.

11. BBVA Compass Bank ("Compass Bank") is the Debtor's primary secured lender with a first lien on substantially all of the Debtor's assets, including the Debtor's accounts receivable, when generated, and cash (collectively "Collateral"). As of the Petition Date, Compass Bank is owed a total of approximately $6.5 million in connection with three loans: an equipment note with a balance of $233,000, a construction loan with an outstanding balance of $1.1 million and a line of credit with a balance of $5.078 million (collectively "Compass Bank Loans"). Additionally, Capital Certified Development Corporation retains a second lien on the Equipment in connection with an SBA loan and is owed approximately $949,000 ("SBA Loan"). The Debtor's affiliated entities are all also liable for the Compass Bank Loans. RB Products Holding LLC is a co-borrower on the SBA Loan. The Debtor also has general unsecured vendor debt of approximately $43,000. Additionally, prior to the Petition Date, a party asserted a disputed claim against the Debtor in the approximate amount of $200,000 in an arbitration proceeding. The Debtor has asserted a counterclaim in connection with this dispute.

12. Prior to the bankruptcy filing, the Debtor was delinquent in its obligations owed to Compass Bank. A prepetition forbearance agreement between the RB Group and Compass Bank expired on May 5, 2013. Compass Bank has extended the forbearance agreement with all RB Group borrowers other than RB Processing, thereby prompting the filing of this case. The Debtor intends to use this case to restructure its debt or sell its assets while stabilizing its revenue.

### B. Financing History

<u>Compass Bank</u>

13. On or about October 7, 2011, RB Processing and the RB Group, entered into a promissory note (the "First Compass Bank Note") with Compass Bank which provided,

among other things, that Compass Bank extend the RB Group a revolving line of credit in the aggregate principal amount of $7 million (the "First Loan").

14. The First Compass Bank Note is secured by separate liens on substantially all the assets of the RB Group, including those of the Debtor (the "Security Agreement"). The First Loan proceeds were fully funded by Compass Bank and benefitted the Debtor as a substantial portion of the loan proceeds were used to build the plan described above. As of the Petition Date, the outstanding principal balance and interest on the First Loan was $5,078,507.35, plus costs, expenses and attorneys fees.

15. The Debtor and RB Group defaulted in certain financial covenants contained in the First Compass Bank Note. On February 4, 2013, Compass Bank entered into a forbearance agreement with the RB Group with respect to the First Compass Bank Note, whereby Compass Bank agreed to forbear exercising its rights and remedies under the First Compass Bank Note until May 5, 2013.

16. Additionally, on or about October 7, 2011, RB Processing entered into a promissory note with Compass Bank (the "Second Compass Bank Note") which provided, among other things that Compass Bank loan $350,000 in connection with the acquisition of the Equipment (the "Second Loan").

17. The Second Compass Bank Note is secured by a lien on the Equipment (the "Security Agreement"). The Second Loan proceeds were fully funded by Compass Bank and the Equipment was acquired. As of the Petition Date, the outstanding principal balance of on Second Compass Bank Note is approximately $233,000.

18. Subsequently, RB Processing and parent RB Products Holding, LLC entered into a promissory note with Compass Bank (the "Third Compass Bank Note") which

provided, among other things, that Compass Bank loan the Debtor approximately $1.2 million (the "Third Loan") for the construction of the RB Hydro Unit 1.

19. The Third Compass Bank Note is secured by a lien on the Equipment. The Third Loan proceeds were fully funded by Compass Bank and the Equipment was built. As of the Petition Date, the outstanding principal balance of on Third Compass Bank Note is approximately $1,106,500. The First Loan, Second Loan, and Third Loan are collectively referred to hereafter as "Compass Bank Loans."

20. Ray Rice and the non-debtor RB Group entities are liable on all of the Compass Bank Loans.

Capital Certified Development Corporation

21. On or about August 1, 2012, RB Processing and parent RB Products Holding, LLC entered into a promissory note with Capital Certified Development Corporation (the "CDC Note") which provided, among other things, that CDC loan the Debtor $984,000 (the "CDC Loan") in connection with the construction of the Equipment.

22. The CDC Note is secured by a second lien on the Equipment. As of the Petition Date, the outstanding principal balance on the CDC Note is approximately $921,200.

C. Reasons for Filing Bankruptcy

23. This bankruptcy case was filed for two primary reasons. First, the Debtor and RB Group's forbearance agreement with Compass Bank expired on May 5, 2013, and the defaults were not cured. Compass Bank has entered into a forbearance agreement with all RB Group borrowers other than RB Processing, thereby prompting this Chapter 11 filing by the Debtor. The Debtor needs sufficient time to stabilize its operations in order to adequately service its loans with Compass Bank. Second, a dispute with a creditor resulted in the commencement

of an arbitration proceeding. The Debtor has been unable to resolve the litigation.

24. The Debtor intends to utilize this Chapter 11 proceeding to restructure its debt or sell its assets and resolve the pending litigation.

### IV. BUSINESS REASONS JUSTIFY KEEPING EMPLOYEES

25. RB Processing currently has 3 employees: two are production personnel who operate the highly specialized Equipment and one is an operations manager (collectively "Employees"). Retention of these employees is critical to the Debtor's continued operation. The Equipment is a highly technical unit which requires specialized training to operate. The Employees are trained in operating the Equipment. Other managerial and administrative functions are performed by employees of the Debtor's affiliates and receive no compensation from the Debtor. Total prepetition compensation and benefits will not exceed $3000.

26. The Employees are all highly skilled in their respective positions and are extremely valuable to the Debtor's continued operations.

27. As defined herein, Prepetition Employee Claims exist because this case was filed during the Debtor RB Processing's regular payment cycle. Debtor last paid its employees on May 13, 2013, for the week ending May 12, 2013. Thus, Employees are owed for current, accrued, but still unpaid services, rendered from May 13, 2013 through the Petition Date. These payroll obligations are scheduled to be paid on May 30, 2013. By this motion, the Debtor is seeking to pay prepetition wages (including overtime, if any), expenses, benefits and applicable taxes, totaling no more than $3,000. For purposes of maintaining the privacy of the Debtor's employees, a detailed list of amounts owed with respect to each of these items will be provided to the Court at the hearing scheduled on this motion.

28. Debtor's employees are paid an hourly rate. While Debtor seeks permission to pay these employees on an emergency basis, all payments of prepetition wages and expenses will be below the $11,725 priority claim those employees would hold under 11 U.S.C. §507(a)(4).

29. All the employees are owed or have accrued wages, salaries and expenses, in the ordinary course of the Debtor's business (collectively, the "Payroll Obligations"), benefit contributions, including, but not limited to, medical insurance, group dental, vision, life insurance, long-term and short term disability, and a 401(k) savings plan (collectively "Employee Benefit Contributions") prior to the Petition Date. Vacation accrues pro rata over a calendar year; therefore, some employees have accrued vacation as of the Petition Date.

30. The Debtor's wage and salary obligations to its employees are processed and paid through Paychex, an outside payroll service provider, and paid from accounts maintained by Paychex. The day prior to payment of the Payroll Obligations, Paychex notifies the Debtor's of the amount owed and "sweeps" the Debtor's operating account in that amount. Most employees are paid through direct deposit transfer. Paychex remits all payroll garnishments and payroll taxes to the appropriate entities as well as prepares and files all required federal and state payroll related tax filings. The Debtor requests authority to make payment to Paychex, including any fees associated with the service, to ensure that the amounts authorized with respect to the Prepetition Employee Claims are paid ("Payroll Services Payment").

31. Debtor must also ensure that federal income tax, insurance, and social security and medicare taxes (collectively, the "Tax Obligations"), among other assessments, are properly withheld from its employees' payroll. (The Payroll Obligations, the Employee Benefit Contributions, Paychex Payroll Services Payment, and the Tax Obligations are together collectively referred to as the "Prepetition Employee Claims").

32. <u>Employee Benefit Contributions</u>.  General welfare benefits to employees including but not limited to and medical health, dental, life and vision insurances, short and long term disability insurance and maintains responsibility for administering the same, including making payments to the health insurance providers with respect to each of the plans.  These benefits are offered through Debtor's affiliated entity RB Products, Inc.  RB Processing subsequently reimburses RB Products, Inc. for its allocable share these expenses.  The Debtor pays the cost of each employee's health insurance.  Other Employee Benefits are funded through employee contributions and deducted from the employees' wages and salaries.  The employer portion of the Employer Benefits for the prepetition periods is approximately $300.  The Debtor request permissions to pay any prepetition liability owed with respect to these Employee Benefits.

33. <u>401(k) Savings Plan</u>.  The Debtor does not offer a 401(k) savings or similar plan to its employees.

34. <u>Tax Obligations</u>.  RB Processing withholds federal, state, and local employment-related taxes, including federal income taxes, Medicare and social security taxes, and state unemployment insurance from wages and salaries of its employees. RB Processing pays the appropriate insurance or governmental authority through Paychex and requests permission to pay all outstanding prepetition amounts owed in connection with this obligation ("Tax Obligations").

### V.    Relief Sought

35. By this Motion, Debtor requests, pursuant to Sections 363(b), 365, 549 and 105(a) of the Bankruptcy Code, that the Court authorize the Debtor to pay the Prepetition Employee Claims described herein.  Debtor also requests authority to continue performing employee-related Employee Plans and programs, plans, and policies as in effect on the Petition

Date in the ordinary course of the Debtor's business. An emergency hearing on this Motion is necessary because any delay in paying the Prepetition Employee Claims would undermine the Debtor's relationship with its Employees and sap the Employees' morale.

36.  Specifically, the Debtor requests that this Court authorize, up to $11,725.00 per employee:

   a.  the payment of Payroll Obligations, certain Employee Benefit Contributions and Tax Obligations;

   b.  authorize the Debtor to continue to honor the Debtor's Employee Plans, policies and programs with respect to the accrued leave and all vacation, sick-leave, and related policies, as such plans, policies and programs were in effect as of the Petition Date, including the payment of prepetition amounts as they come due in the ordinary course of business, without such conduct and payment being deemed an assumption of said plans, policies and programs;

37.  Pursuant to Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, claims against the Debtor for "wages and salaries, including vacation severance and sick leave pay," earned within one hundred eighty (180) days before the Petition Date, and claims against the Debtor for contributions to employee benefit plans arising from services rendered within 180 days before the Petition Date, are entitled to unsecured priority status to the extent of $11,725.00 per Employee.

38.  Specifically, the Debtor submits that failure to continue current policies regarding benefits will undermine the Employees' morale by potentially subjecting them to considerable personal hardship (including the loss of their expected benefits and in some cases an immediate inability to meet basic living expenses). The mass employee departure that would result from such a breach of trust by the Debtor would destroy any prospect for its reorganization.

39. A bankruptcy court may authorize the payment of prepetition obligations when necessary to facilitate a debtor's reorganization. *See*, *e.g.*, *In re Equalnet Communications Corp.*, 258 B.R. 368 (Bankr. S.D. Tex. 2000). This authority stems from the common-law "necessity of payment" doctrine, which courts have applied when the failure to pay prepetition obligations poses a real and significant threat to a debtor's reorganization. *See Dudley v. Mealey*, 147 F.2d 268 (2d Cir. 1945), *cert. denied* 325 U.S. 873 (1945). In a well-established line of cases, this doctrine was first applied in conjunction with railroad reorganizations. *See, e.g., Gregg v. Metropolitan Trust Co.*, 197 U.S. 183 (1905) ("the payment of the employees of the [rail]road is more certain to be necessary in order to keep it running than payment of any other class of previously incurred debt"); *Miltenberger v. Logansport, Crawfordsville & Southwestern Railway Co.,* 106 U.S. 286 (1882) (permitting the payment of pre-receivership claim prior to reorganization in order to prevent the cessation of "indispensable business relations").

40. The "necessity of payment" doctrine was eventually expanded beyond railroad reorganizations, beginning with *Dudley v. Mealey*. 147 F.2d 268. In *Dudley*, the court held that the creditors' interest in continuing the debtor's hotel business justified paying the prepetition claims of creditors who furnished supplies essential to keeping the hotel open. *Id.* at 271. Numerous courts have applied *Dudley*'s doctrine in situations similar to this Case, recognizing that the payment of certain prepetition wage, salary, medical-benefit, and business-expense claims was justified since no business debtor can hope to reorganize without the cooperation of its employees. *In re* Ionosphere *Clubs, Inc.*, 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989).

41. The modern analogue to the "necessity of payment" doctrine appears in Section 105(a) of the Bankruptcy Code, which provides, in pertinent part: "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This includes the power to authorize the payment of the Prepetition Employee Claims, including the Services Payroll Payment.

42. Authorizing the Prepetition Employee Claims is essential to the Debtor's prospect for successfully emerging from Chapter 11. If these claims are not satisfied, the Employees will suffer and may find themselves unable to meet their most basic needs. Furthermore, they will likely abandon the Debtor for other employers, and the Debtor will find the prospects for a successful reorganization doomed from the start. The Employees' specialized skills are essential to the Debtor and represent their most critical resource. Any failure to pay the Prepetition Employee Claims will deprive the Debtor of a genuine opportunity at a "fresh start."

43. By the same token, it is also crucial that the Debtor honor its existing policies and programs regarding vacation and sick leave, and that it meet any further obligations as they come due in the ordinary course of business. The Employees expect the Debtor to meet these obligations, and any chance that it might not will likely spur the Employees to look for work elsewhere.

WHEREFORE, Debtor respectfully pray that the Court approve this Motion in its entirety and grant all the relief requested herein and grant the Debtor such further relief as it deems just and proper.

DATED:     May 17, 2013

Respectfully submitted,

HOOVER SLOVACEK LLP

/s/ Melissa A. Haselden
By: _____
EDWARD L. ROTHBERG
State Bar No. 17313990
MELISSA A. HASELDEN
State Bar No. 00794778
5847 San Felipe, Suite 2200
Houston, Texas 77057
Telephone: (713) 977-8686
Facsimile: (713) 735-4135

PROPOSED ATTORNEYS FOR DEBTOR

### Verification

The factual statements in paragraphs 1-4 are true and correct within my own personal knowledge. In my opinion, a genuine emergency exists that requires consideration of this matter in order to avoid hardship to the bankruptcy estate, and so that the Debtor can maintain its operations and control of its assets. I certify under penalty of perjury that the foregoing is true and correct.

/s/ Melissa A. Haselden
MELISSA A. HASELDEN

### CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing *Emergency Motion for Entry of an Order Approving Debtor's Payment of Pre-Petition Compensation, Taxes, Mandatory Support Obligations, and Payroll Processing Fees* were forwarded via facsimile, e-mail, and/or U.S. first class mail, postage prepaid, on May 17, 2013, to the parties listed on the attached Service List.

/s/ Melissa A. Haselden
MELISSA A. HASELDEN

**RB PROCESSING, L.L.C.**
**SERVICE LIST**

| | | |
|---|---|---|
| RB Processing, L.L.C.<br>740 Bradfield Road<br>Houston, TX 77060 | Christine March<br>Office of the U.S. Trustee<br>515 Rusk, Room 3516<br>Houston, TX 77002 | |
| Texas Workforce Commission<br>Bankruptcy Section<br>P O Box 149080<br>Austin, TX 78714-9080 | Internal Revenue Service<br>Insolvency Section<br>1919 Smith MAIL STOP HOU 5022<br>Houston, TX 77002 | |
| Automation Service<br>13871 Parks Steed Drive<br>Earth City, MO 63045 | BBVA Compass Bank<br>Attn Brian A. Terlinsky<br>2200 Post Oak Blvd., 21st Floor<br>Houston, TX 77056 | BBVA Compass Bank<br>c/o Mr. Bruce Ruzinsky<br>Jackson Walker LLP<br>1401 McKinney, Suite 1900<br>Houston, TX 77010 |
| Capital Certified Development Corp.<br>Attn Aaron Milligan<br>Building 1, Suite 600<br>1250 S. Capital of Texas Hwy.<br>Austin, TX 78746 | G&K Services<br>P O Box 5498<br>Houston, TX 77262 | Harris County, et al.<br>Tax Assessor-Collector<br>P O Box 4622<br>Houston, TX 77210-4622 |
| Harris County, et al.<br>c/o John P. Dillman<br>Linebarger Goggan Blair & Sampson<br>P O Box 3064<br>Houston, TX 77253-3503 | Hi-Tech Industrial Services, Inc.<br>P O Box 1920<br>Lees Summit, MO 64063 | Internal Revenue Service<br>P O Box 7346<br>Philadelphia, PA 19101-7346 |
| IP Investments, LLC<br>10201 Bay Area Blvd<br>Pasadena, TX 77507 | LabCal Repairs and Services Inc.<br>P O Box 1426<br>Kemah, TX 77565 | Luman Enterprises<br>851 Infinity Lane<br>Nacogdoches, TX 75961 |
| ORR Safety<br>1266 Reliable Parkway<br>Chicago, IL 60686 | RB Environmental, LLC<br>740 Bradfield Road<br>Houston, TX 77060 | Securities & Exchange Commission<br>Attn: Angela Dodd<br>175 W. Jackson Blvd.<br>Suite 900<br>Chicago, IL 60604-2908 |
| Texas Comptroller of Public Accounts<br>Revenue Accounting Division<br>Bankruptcy Section<br>P O Box 12548<br>Austin, TX 78711-2548 | US Small Business Administration<br>8701 S. Gessner Drive, Suite 1200<br>Houston, TX 77074 | US Small Business Administration<br>409 3rd Street, SW<br>Washington, DC 20416 |
| W. W. Grainger, Inc.<br>Attn Special Collections Dept.<br>7300 N Melvina<br>Niles, IL 60714 | | |